**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No.: 10-20730-Civ-COOKE/BANDSTRA**

BGW DESIGN LIMITED, INC.,

      Plaintiff

vs.

SERVICE AMERICA CORPORATION,

      Defendant.

_____/

**<u>ORDER GRANTING IN PART AND DENYING IN PART</u>**
**<u>DEFENDANT'S MOTIONS TO DISMISS</u>**

THIS CASE is before me on the Defendant's Motion to Dismiss (ECF No. 22). I have reviewed the arguments, the Amended Complaint, and the relevant legal authorities. For the reasons explained below, the Motion is granted in part and denied in part.

**I. BACKGROUND**

This is a breach of contract case brought by BGW Design Limited, Inc. The Plaintiff alleges that the Defendant, Service America Corporation, breached the joint venture agreement established by the Parties to obtain a contract with the City of Miami Beach to be the exclusive food and beverage provider at the Miami Beach Convention Center.

Prior to the Parties alleged agreement, Service America, pursuant to a contract with the City of Miami Beach, was the exclusive provider of food and beverage at the Convention Center. (Am. Compl. ¶ 9, ECF No. 17). However, in 2005, the City found Service America to be in default due to service deficiencies and subsequently determined that it would not exercise its second renewal option with Service America. (*Id.* ¶ 13).

Before 2006, a City ordinance did not allow food or beverage to be served at the Convention Center "except in connection with a bona fide convention, trade show, public show, entertainment event, consumer show or similar event normally associated with convention centers," thereby limiting the type of event that could be held.  (*Id.* ¶ 10).  BGW Design is an event designer, and the City ordinance prohibited the type of event that BGW Design typically produces.  (*Id.* ¶¶ 5, 10).  In 2006 the City ordinance was lifted and the City entertained bids for an exclusive food and beverage contract at the Convention Center.  (*Id.* ¶ 14).

Service America, interested in obtaining the contract with the City, approached BGW Design and requested that the Parties join efforts in order to obtain the contract.  Service America conveyed to BGW Design that the Convention Center would serve as a prototype and Service America would launch an event design and production program that would be serviced by BGW Design at other facilities.  (*Id.* ¶ 17).

BGW Design was approached by other interested bidders, but instead agreed to partner with Service America.  (*Id.* ¶ 20).  The Parties worked out an agreement but never executed a formal written agreement; instead Service America had BGW execute a letter of intent stating that the Parties would attempt to reach a definitive agreement by July 15, 2006.  (*Id.* ¶ 24).

In June 2006, the City formed a panel to evaluate those companies who had entered a bid for the exclusive food and beverage contract.  (*Id.* ¶ 31).  The Parties teamed up for this event and the City's Evaluation Committee recommended that the contract be awarded to Service America on the condition that BGW Design was contractually "locked in."  (*Id.* ¶¶ 33, 36).

In September 2006, the Parties reached a new joint venture agreement to obtain the City Contract.  (*Id.* ¶ 43).  BGW Design asked Service America to provide proof that the City was aware of the financial arrangements between the Parties, and on November 7, 2006, Service

America provided BGW Design with a spreadsheet of commissions that Service America represented the City had approved.  (*Id.* ¶¶ 51-52).  BGW Design consequently did not disassociate with Service America and moved forward in the joint venture.  (*Id.* ¶ 53).

In July and December 2007, Service America provided BGW Design with a draft contract, but according to BGW Design neither instrument reflected the September 2006 agreement, failing to include terms such as the agreed up commission rates.  (*Id.* ¶¶ 56-58).  In December 2007, Service America executed a contract with the City without first entering into a contract with BGW Design.  (*Id.* ¶ 59).  On May 15, 2008, Service America sent BGW Design a letter stating that it was terminating the Parties' business relationship.  (*Id.* ¶ 66).

BGW Design filed this lawsuit against Service America alleging fraud (Count I), breach of contract (Count II), breach of fiduciary duty (Count III), and tortious interference (Count IV). Service America has moved to dismiss all four counts.

## II. LEGAL STANDARDS

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  In order to survive a motion to dismiss, a plaintiff must articulate "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). While detailed factual allegations are not required, a pleading that merely offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not survive a motion to dismiss.  *Id.*

When considering a motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must accept all of the plaintiff's allegations as true, construing them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008).

### III. DISCUSSION

### A. Fraud (Count I)

In Count I, BGW Design alleges that Service America made fraudulent misrepresentations, inducing BGW Design to enter into a joint venture agreement with Service America.[1]  (Am. Compl. ¶¶ 69-82, ECF No. 17).  Service America argues that these claims should be dismissed because: (1) BGW Design could not have reasonably relied upon the conduct of Service America; (2) the fraud claim is too speculative because it is based on hypothetical assumptions; (3) BGW Design failed to plead the claims with particularity pursuant to Federal Rule of Civil Procedure 9(b); and (4) BGW Design's fraud claim is barred by the economic loss rule.  (Mem. Supp. Mot. Dismiss 16-19, ECF No. 23).

### 1. Reasonable Reliance

Service America argues that BGW Design could not have reasonably relied on the statements regarding Service America's future action.  (Mem. Supp. Mot. Dismiss 18). "Actionable misrepresentations must ordinarily relate to a past or existing fact." *Royal Typewriter Co. v. Xerographic Supplies Corp.*, 719 F.2d 1092, 1104 (11th Cir. 1983).  Florida law "treats a promisor's intent as a material existing fact." *Citibank, N.A. v. Data Lease Fin.*

---

[1] "Under Florida law, a joint venture is defined as 'a special combination of two or more persons, who, in some specific venture, seek a profit jointly without the existence between them of any actual partnership, corporation, or other business entity.'" *Browning v. Peyton*, 918 F.2d 1516, 1520 (11th Cir. 1990) (citing *Fla. Tomato Packers, Inc. v. Wilson*, 296 So. 2d 536, 539 (Fla. Dist. Ct. App. 1974)).

*Corp.*, 828 F.2d 686, 694 n.12 (11th Cir. 1987).  A plaintiff seeking to recover for

misrepresentation of a promise to perform a future act "must show that the promisor either

lacked the intention to perform the promise or specifically intended not to perform at the time the

representation was made." *Royal Typewriter Co.*, 719 F.2d at 1104.

BGW Design has sufficiently alleged a misrepresentation of existing fact by asserting

that Service America "had no intention" to perform when the representations were made.  (Am.

Compl. ¶¶ 49-50, 71).  These allegations are sufficient to meet the exception to the rule because,

allegedly, "the promise of future action [was] made with no intention of performing or with a

positive intention not to perform." *Thor Bear, Inc. v. Crocker Mizner Park, Inc.*, 648 So. 2d 168,

172 (Fla. Dist. Ct. App. 1995); *see also* Fed. R. Civ. P. 9(b) (permitting intent and knowledge to

be pled generally).

**2. Fraud Claim as Too Speculative**

Service America moves to dismiss the fraud claim maintaining that it is "too

speculative." (Mem. Supp. Mot. Dismiss 19-20).  Service America first argues that the damages

alleged in the Amended Complaint are too hypothetical and speculative to support the fraud

claim.  Service America next asserts that BGW Design's assumption that, absent Service

America's statements, it would have entered into a relationship with one of Service America's

competitors is too speculative to survive a motion to dismiss.  (*Id.* at 19).

In a motion to dismiss, the court must presume that all of the well-pleaded allegations are

true, and view the allegations in the light most favorable to the plaintiff.  *Am. United Life Ins.*

*Co. v. Martinez*, 480 F.3d 1043, 1066 (11th Cir. 2007).  The Amended Complaint sets forth

allegations that the City's Evaluation Committee awarded the bid based on BGW Design's

presentation and that the City's decision to contract with Service America was based on BGW

Design's participation and performance.  (Am. Compl. ¶¶ 32-33, 36).  BGW Design also alleges

that other bidders for the contract with the City approached BGW Design.  (*Id.* ¶ 20).  Taking

these facts as true, it is not too speculative that BGW Design could have paired with another

company had Service America not made the alleged fraudulent misrepresentations.

Consequently, the Motion to Dismiss will not be granted on this ground.

**3. Pleading with Particularity**

Claims of fraud must be pled with particularity pursuant to Federal Rule of Civil

Procedure 9(b).  *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1262 (11th Cir. 2006).  To state

a claim of fraud under Florida law, a plaintiff must sufficiently allege: (1) a false statement

concerning a material fact; (2) the representor's knowledge that the representation is false; (3) an

intention to induce another to act on the representation; and (4) consequent injury by the party

relying on the representation.  *Johnson v. Davis*, 480 So. 2d 625, 627 (Fla. 1985).

First, BGW Design alleges that Service America made representations that it had

"received rave reviews," "had a long and successful history at the Convention Center," and had a

staff with "experience providing services at the Convention Center."  (Am. Compl. ¶¶ 26, 70).

BGW Design asserts that those statements were in fact false, alleging that Service America had

been in default, had several service deficiencies, and did not have a staff with experience.  (*Id.* ¶¶

26, 38, 73).  BGW Design alleges that as a result of these statements it affiliated with Service

America, and Service America intended to use this affiliation to obtain the contract with the City

for itself.  (*Id.* ¶ 72).

Second, BGW Design asserts that Service America represented that it would develop

alliances with BGW regarding other facilities.  (*Id.* ¶¶ 18-20, 72).  BGW Design specifically

states that these comments were made in March 2006 to its executives when Service America

hosted a tour of the Jacob Javits Convention Center and Yankee Stadium in New York City.  (*Id.* ¶ 19).  This assertion provides sufficient notice of the content of the alleged misrepresentation and the time and place of these statements.  BGW Design alleges that it relied on Service America's statements in continuing its joint venture with Service America.  According to the Amended Complaint, this reliance denied BGW Design the opportunity to consider the option of associating with Service America's competitors in order to obtain the contract with the City, and prevented BGW Design from disassociating with Service America prior to Service America obtaining the contract for itself.  (*Id.* ¶¶ 74, 77, 78).

Based on these allegations, BGW Design has sufficiently pled the specific statements that misled it and what Service America obtained as a consequence of the alleged misrepresentation. Therefore, BGW Design has pled its claims of fraud with particularity pursuant to Federal Rule of Civil Procedure 9(b).

**4. Economic Loss Rule**

The economic loss rule prevents a plaintiff from seeking damages in a tort action for conduct that is indistinguishable from the acts giving rise to a claim for breach of contract.  *See Indem. Ins. Co. of N. Am. v. Am. Aviation, Inc.*, 891 So. 2d 532, 537 (Fla. 2004) ("Where a contract exists, a tort action will lie for either intentional or negligent acts considered to be independent from the acts that breached the contract.").  "[T]he economic loss rule does not bar tort actions based on fraudulent inducement and negligent misrepresentation." *Allen v. Stephan Co.*, 784 So. 2d 456. 457 (Fla. Dist. Ct. App. 2000).

BGW Design asserts that at the time of the alleged contract formation, Service America had misrepresented its intent to obtain the contract with the City for both Parties.  (Am. Compl. ¶ 72).  This asserted misrepresentation is distinguishable from Service America's alleged failure to

obtain the contract with the City in accordance with the terms set forth in the joint venture agreement. (*Id.* ¶ 86). Since BGW Design has alleged a misrepresentation concerning the formation of a contract apart from the breach of that contract, its claim of fraud is not barred by the economic loss rule.

## B. Breach of Contract (Count II)

BGW Design alleges that it entered into an oral agreement with Service America, agreeing to a joint venture to obtain the contract with the City. (Am. Compl. ¶ 84). BGW Design further alleges that it fully performed under the agreement and that Service America breached the joint venture agreement by: (1) failing to obtain the contract with the City in accordance with the terms set forth in the agreement; (2) failing to require the City to approve the Parties' contract; and (3) failing to advise the City of the commission structure required to compensate BGW. (*Id.* ¶¶ 85, 86). BGW Design asserts that "[a]s a direct and proximate result" of Service America's breach, it was damaged, "including lost profits." (*Id.* ¶ 87).

Service America first argues that the breach of contract claim should be dismissed because it argues the letter of intent renders the oral joint venture agreement unenforceable. (Mem. Supp. Mot. Dismiss 4-5). BGW Design, however, does not seek to enforce the letter of intent, and contends that the oral agreement was based on terms different than those in the letter of intent. (Am. Compl. ¶ 41). BGW Design alleges that at the September 2006 meeting the Parties agreed to a separate oral joint venture agreement to obtain a contract with the City. (*Id.* ¶ 42). BGW Design specifically stated that "it would not continue participating with [Service America] unless [Service America] agreed to new terms which were consistent with those presented to the City and which were *different* than those set forth in the letter of intent." (*Id.* ¶ 41) (emphasis added). Based on BGW Design's allegations, which must be taken as true, the

letter of intent does not preclude enforcement of the joint venture agreement. *See Linder v. Portocarrero*, 963 F.2d 332, 334-36 (11th Cir. 1992).

Second, Service America argues that the joint venture agreement is unenforceable because the City was required to approve the contract between the Parties and this "condition precedent" did not occur. (Mem. Supp. Mot. Dismiss 5-6). BGW Design alleges that Service America's failure to present the City with the agreed upon terms was a breach of the contract, not a condition precedent. (Am. Compl. ¶ 86(b)). I reject Service America's argument because Service America cannot assert that its own failure to get the City's approval was a condition precedent to an enforceable agreement between the Parties. *See Amoco Oil Co. v. Gomez*, 125 F. Supp. 2d 492, 500 (S.D. Fla. 2000) ("Under Florida law, parties who prevent performance of a contract by their own acts cannot take advantage of their own wrong.").

Finally, Service America moves to dismiss this claim on the ground that the statute of frauds bars it. Section 725.01, Florida Statutes, provides:

> No action shall be brought . . . upon any agreement that is not to be performed within the space of 1 year from the making thereof . . . unless the agreement . . . upon which such action shall be brought, or some note or memorandum thereof shall be in writing and signed by the party to be charged therewith . . . .

The statute of frauds is an affirmative defense and therefore may be raised in a motion to dismiss only if the defense is apparent on the face of the complaint. *Brennan v. City of Minneola, Fla.*, 723 F. Supp. 1442, 1443 (M.D. Fla. 1989).

Under Florida law, "[t]he primary factor to be utilized in determining whether or not an oral contract is to be performed within the one year limitation of the statute is, of course, the intent of the parties." *First Realty Inv. Corp. v. Gallaher*, 345 So. 2d 1088, 1089 (Fla. Dist. Ct. App. 1977). The intent of the parties is a factual matter and therefore should not be resolved on a motion to dismiss. *Am. Honda Motor Co., Inc. v. Motorcycle Info. Network, Inc.*, 390 F. Supp.

2d 1170, 1177 (M.D. Fla. 2005). BGW Design alleges that the Parties had formed a joint

venture to obtain a contract with the City and that this joint venture was to be executed in less

than one year. (Am. Compl. ¶¶ 45-47, 84). While it is established that "[a]n oral agreement to

enter into a new business which will continue indefinitely has been held to be within the purview

of the [statute of frauds]," *LynkUs Communications, Inc. v. WebMD Corp.*, 965 So. 2d 1161,

1165 (Fla. Dist. Ct. App. 2007), accepting BGW Design's allegations as true, the statute of

frauds defense is not apparent on the face of the Amended Complaint. Accordingly, Service

America's Motion to Dismiss is denied as to Count II.

**C. Breach of Fiduciary Duty (Count III)**

Service America contends that Count III is barred by the economic loss rule. (Mem.

Supp. Mot. Dismiss 12-13, 15-16). As discussed previously, "[t]he economic loss rule is a

judicially created doctrine that sets forth the circumstances under which a tort action is

prohibited if the only damages suffered are economic losses." *Am. Aviation, Inc.*, 891 So. 2d at

536. In explaining the rationale behind the rule, the Florida Supreme Court stated:

> Underlying this rule is the assumption that the parties to a contract have allocated
> the economic risks of nonperformance through the bargaining process. A party to
> a contract who attempts to circumvent the contractual agreement by making a
> claim for economic loss in tort is, in effect, seeking to obtain a better bargain than
> originally made. Thus, when the parties are in privity, contract principles are
> generally more appropriate for determining remedies for consequential damages
> that the parties have, or could have, addressed through their contractual
> agreement.

*Id.* at 536-37.

Count III of the Amended Complaint asserts a claim for breach of fiduciary duty, and

Service America contends that this claim is barred under the economic loss rule. (Mem. Supp.

Mot. Dismiss 12-13). In this case, BGW Design's claim for breach of fiduciary duty is based

upon, and inextricably intertwined with, its claim for breach of contract. For instance, in its

claim for breach of fiduciary duty BGW Design alleged the same injury as it did in its breach of contract claim—its inability to contract with the City due to Service America's actions.  (*See* Am. Compl. ¶¶ 86(c), 90(b)).

BGW Design's claim for a breach of fiduciary duty arises solely as a result of the existence of a contract between the parties.  Thus, the breach of fiduciary duty claim is inextricably intertwined and dependent upon the breach of contract claim.  *See Behrman v. Allstate Ins. Co.*, 388 F. Supp. 2d 1346, 1349 (S.D. Fla. 2005); *Am. Aviation, Inc.*, 891 So. 2d at 536-44.  Therefore, BGW Design's claim for breach of fiduciary duty is dismissed.

## D. Tortious Interference (Count IV)

A claim for tortious interference with a business relationship exists where the plaintiff establishes: (1) the existence of a business relationship; (2) the defendant's knowledge of the business relationship; (3) the defendant's intentional and unjustified interference with the business relationship; and (4) damages resulting from the interference.  *See Fla. Tel. Corp. v. Essig*, 468 So. 2d 543, 544 (Fla. Dist. Ct. App. 1985).

Service America argues that BGW Design has failed to state a claim for tortious interference because BGW's allegations are too speculative.  (Mem. Supp. Mot. Dismiss 14-15).  I agree.  First, BGW Design alleges that "[h]ad [Service America] advised the City that [BGW Design] was not part of its agreement, the City would have entered into a business relationship with [BGW Design] through its affiliation with another food service provider." (*Id.* ¶ 93).  These allegations are too speculative to support a claim for tortious interference.  BGW Design is speculating that if Service America had not interfered, BGW would have entered into a contract with another concessionaire and received the contract with the City.  Under Florida law, this type of speculative allegation regarding a *potential* business relationship is insufficient to support a

11

tortious interference claim. *See Thunderwave, Inc. v. Carnival Corp.*, 954 F. Supp. 1562, 1566

(S.D. Fla. 1997).

Furthermore, BGW Design has not sufficiently alleged tortious interference with the

City.  Under Florida law, in order to show a business relationship, a plaintiff must show an

enforceable contract or the existence negotiations. *Landry v. Hornstein*, 462 So. 2d 844, 846

(Fla. Dist. Ct. App. 1985).  BGW Design has not alleged that it had a valid contract or that it was

in negotiations with the City.  Thus, BGW has failed to allege a sufficient tortious interference,

and Count IV is accordingly dismissed.

## IV. CONCLUSION

For the reasons explained in this order, it is **ORDERED and ADJUDGED** that the

Defendant's Motion to Dismiss (ECF No. 22) is **GRANTED in part and DENIED in part**, as

follows:

1. Count III (Breach of Fiduciary Duty) and Count IV (Tortious Interference) are

**DISMISSED with prejudice**.

2. The remaining Counts of the Plaintiff's Amended Complaint, Count I (Fraud) and

Count II (Breach of Contract), remain.  The Defendant's Motion to Dismiss is denied as to these

Counts.

**DONE and ORDERED** in chambers, at Miami, Florida, this 3rd day of December 2010.

_____

MARCIA G. COOKE
United States District Judge

Copies furnished to:
*Ted E. Bandstra, U.S. Magistrate Judge*
*Counsel of record*